An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTOPHER ORMON SMITH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63702

**FILED**

MAY 2 9 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary while in possession of a deadly weapon and first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

Appellant Chris Smith contends on appeal that the district court erred by (1) permitting the State to amend the grand jury's indictment, (2) admitting the testimony of a substitute medical examiner, (3) giving its jury instructions on the presumption of innocence, and (4) finding guilt based on insufficient evidence. Additionally, Smith asserts that the cumulative effect of these errors warrants reversal.

### BACKGROUND

Smith was engaged in a romantic relationship with Dawn Colver. Smith and Colver had a child and were sharing a residence with Smith's friend, Marquell James. After Smith and Colver ended their relationship, unbeknownst to Smith, James and Colver began dating and living together. Smith and Colver's child lived with Colver and James.

Colver prohibited the child from sharing information with Smith about her relationship with James. She also prohibited the child from giving Smith her address or phone number. Nonetheless, Smith

SUPREME COURT
OF
NEVADA

(O) 1947A

15-16397

questioned the child regarding whether Colver and James were dating. The child, in accordance with Colver's instructions, told Smith that Colver and James were not dating.

On April 11, 2007, James and the child dropped Colver off at work and then went to a recreational facility. While there, the child called Smith and told him that she wanted to stay with him for a while because she was arguing with her mother. She additionally told Smith that she was out with James and that she would call him when she returned to her house so that he could pick her up. When she returned home, she packed a bag and called Smith to come get her, but never informed her mother or James that she was leaving. She provided Smith with the cross streets to her housing complex, as she did not want to give him the address because of her mother's rule that Smith could not know where they lived.

When Smith received the child's call, he did not understand why the child was with James and expressed that concern to his girlfriend, Stephanie Aragon. Smith then instructed Aragon to drive him to his mother's home, where he retrieved a baseball bat, and to his brother's home, where he retrieved a gun. Following the directions that the child provided, Aragon and Smith located the housing complex. They drove around the housing complex until they spotted the child in front of a house where a car that Colver had been seen driving was also parked. After the child got in the car, Aragon drove one block and stopped at a stop sign. Smith then exited the vehicle and returned to the house he believed James lived in, where James was in his bedroom watching television. After Smith entered the home, a fight ensued between Smith and James. Smith then shot James in the chest, killing him.

SUPREME COURT
OF
NEVADA

(O) 1947A

A grand jury indicted Smith on charges of burglary while in possession of a deadly weapon and murder with use of a deadly weapon. Under the burglary charge, the State posed three theories of intent: intent to commit assault, battery and/or murder. Under the murder charge, the state also posed three theories: (1) killing with premeditation and deliberation, (2) felony murder, to wit, killing in an attempt to commit a burglary, and (3) killing as a result of a challenge to fight.

Smith filed a motion to strike felony murder as a theory of murder, arguing that the felony murder doctrine cannot apply to a burglary where the intent underlying the burglary is murder. In response, the State filed a motion to amend the indictment, which the district court granted. Instead of removing the felony murder theory of murder, the State amended the indictment to remove the intent to murder theory of burglary.

At trial, Dr. Timothy Dutra testified in place of the medical examiner who conducted James' autopsy. Prior to his testimony, Dr. Dutra reviewed photographs from the autopsy and the autopsy report. On direct examination, Dr. Dutra testified about his conclusions based on the photographs and autopsy report. In response to a juror question, Dr. Dutra also testified that it was his opinion that the gunshot wound was a long distance shot of a foot or more, which was consistent with the original medical examiner's opinion.

A jury found Smith guilty of burglary while in possession of a deadly weapon and murder with use of a deadly weapon.

## *DISCUSSION*

### *Amendment to Indictment*

On appeal, Smith contends that the indictment became defective when, after the grand jury issued its true bill, the State removed the intent to murder theory of burglary. He argues the State does not possess the authority to make such a substantive and prejudicial amendment to the grand jury indictment.[1] The State asserts that it was authorized to amend the grand jury indictment because Smith was not prejudiced and was put on notice of the charges against him.

We review the district court's decision to allow the State to amend its indictment for abuse of discretion. *See Green v. State*, 94 Nev. 176, 177, 576 P.2d 1123, 1123 (1978). Pursuant to NRS 173.095(1), "[t]he court may permit an indictment or information to be amended *at any time before verdict or finding* if no additional or different offense is charged and if *substantial rights of the defendant are not prejudiced.*" (Emphasis added).

The district court did not abuse its discretion in allowing the indictment to be amended after the true bill was issued because it was amended before the jury verdict was issued. *See id.* Additionally, the State simply *removed* one theory of intent, without charging an additional or different offense. *See id.* Further, Smith was not prejudiced by the change. *See id.* The theory of intent removed from the burglary charge in the amended indictment, intent to commit murder, is intent to commit a

---

[1]Smith contends that the district court should have dismissed the felony murder charge instead of allowing the State to amend its indictment.

(O) 1947A

more serious offense than assault or battery, theories of intent that remained in the amended indictment. Smith fails to demonstrate how the State's decision to proceed on less serious theories of intent was prejudicial to him. Therefore, the amendment to the indictment was not prejudicial, and the district court did not abuse its discretion in allowing it.

*Testimony of Substitute Medical Examiner*

Smith contends that the district court erred by allowing Dr. Dutra to testify in place of the original medical examiner in violation of his right to confront and cross examine witnesses against him.[2] He further contends that because the State used Dr. Dutra's testimony regarding the absence of soot and stippling[3] on James' clothes to argue that the killing was committed from a distance and therefore premeditated, he was prejudiced by his inability to controvert the soot and stippling evidence through cross examination of the original examiner. The State argues that Dr. Dutra's testimony was admissible because it was not offered to prove the truth of the original examiner's reports, but to show the bases of Dr. Dutra's opinion.

We generally review claims of evidentiary error for an abuse of discretion. *Holmes v. State*, 129 Nev., Adv. Op. 59, 306 P.3d 415, 418 (2013) (internal citation omitted). However, this court has determined that, where a *Crawford* violation occurs, harmless error review is

---

[2]Dr. Dutra did not conduct a separate autopsy.

[3]Soot and stippling are substances that result from the firing of a gun and they do not pass through clothing. They are caught on clothing when the gun is fired at close range.

appropriate.[4] *Polk v. State*, 126 Nev. Adv. Op. 19, 233 P.3d 357, 359 (2010). A doctor's testimony regarding his or her independent opinions based on a report generated by another doctor does not violate the confrontation clause because the testifying doctor's "judgment, proficiency, and methodology [are] subject to cross-examination." *Vega v. State*, 126 Nev. 332, 340, 236 P.3d 632, 638, (2010) (holding that testimony relating to the content of such reports may violate the confrontation clause, but testimony regarding the testifier's independent opinions does not). Because Dr. Dutra's testimony related to his own opinions, for which he was available for cross examination, Smith's confrontation right was not violated. *See id.* To the extent that testimony regarding the content of the autopsy report was admitted, we hold such error to be harmless. *See id.*

*Sufficiency of Evidence*

Smith contends that the State failed to prove the mens rea elements of both felony murder and burglary. In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotation omitted). "Since the assaultor's

---

[4] "Under *Crawford,* the testimonial statement of an otherwise unavailable witness is inadmissible "unless the defendant had an opportunity to previously cross-examine the witness regarding the witness's statement." *Polk v. State*, 126 Nev., Adv. Op. 19, 233 P.3d 357, 359 (2010) (internal quotations omitted).

state of mind is a subjective matter, the trier of the fact must resort to inferences from attendant circumstances to ascertain intent." *Wilson v. State*, 85 Nev. 88, 90, 450 P.2d 360, 361-62 (1969).

Testimony supported the fact that Smith went to his mother's home to retrieve a bat and to his brother's home to retrieve a gun before proceeding to James' home and beating and shooting him to death. This, among other evidence of guilt, was sufficient to establish that Smith "enter[ed]" with the intent to commit an assault or battery, and therefore, a "rational trier of fact" could have found burglary. *See* NRS 205.060(1); *Origel-Candidoe*, 114 Nev. at 381, 956 P.2d at 1380. Further, the burglary charge, which resulted in James' death, is then sufficient to establish felony murder. *See Contreras v. State*, 118 Nev. 332, 337, 46 P.3d 661, 664 (2002) (holding that burglary is sufficient to uphold a separate felony-murder charge). Therefore, there was sufficient evidence to convict Smith of burglary while in possession of a deadly weapon and first degree murder with use of a deadly weapon.[5]

---

[5] Smith raises two additional issues on appeal. Smith first contends that the presumption of innocence jury instruction violated his right to due process because, although the instruction provided that the prosecution must prove every material element, the instruction failed to identify the material elements. This claim is meritless. *See Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235, 259 (2011) ("This court has repeatedly upheld such language."). Smith's final contention is that cumulative error warrants reversal. Because the district court did not err, there is no cumulative error. *See Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007) (discussing standard for cumulative error).


(O) 1947A

Based on the foregoing, we ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Valerie Adair, District Judge
       Special Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk