# IN THE SUPREME COURT OF THE STATE OF NEVADA

EMILIO EAVALIO ARENAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78673

FILED

SEP 15 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER AFFIRMING IN PART,
## REVERSING IN PART AND REMANDING

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, first-degree kidnapping resulting in substantial bodily harm, conspiracy to commit murder, conspiracy to commit kidnapping, and conspiracy to commit robbery. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Emilio Arenas, codefendant Peyton Hemingway, and a third co-conspirator Theresa Allen participated in battering, robbing, and murdering the victim. The two men stuffed the victim into a suitcase after beating him and submerged it in a bathtub. After several minutes the men removed the suitcase and placed it in Arenas' vehicle. Law enforcement recovered the victim's body, still in the suitcase, from a dumpster. Arenas raises several issues on appeal.

*Motion for severance*

Arenas argues that the district court erred in denying his motion to sever his trial from Hemingway's. Although the law favors trying

21-26729

jointly-indicted defendants together, *Jones v. State*, 111 Nev. 848, 853, 899 P.2d 544, 547 (1995), severance may be proper if joinder prejudices either party, NRS 174.165(1); *Marshall v. State*, 118 Nev. 642, 646, 56 P.3d 376, 378 (2002) ("The decisive factor in any severance analysis remains prejudice to the defendant.").

Here, Arenas contends that Hemingway's counsel made improper comments during the joint trial that resulted in prejudice. The record shows that Hemingway's counsel made antagonistic comments in the sense that he tried to lessen his client's culpability by suggesting that Arenas was more culpable because he faced a death sentence; however, the defense theories in this case were neither mutually exclusive nor irreconcilable with one another. *Cf. Marshall*, 118 Nev. at 648, 56 P.3d at 380 (determining that defenses were antagonistic where one codefendant testified to exonerate himself and to inculpate the other codefendant). Any prejudice was minimal as the improper comments occurred in opening statements, the district court sustained Arenas' objection and instructed the jury to disregard the comment, and the State presented overwhelming evidence of Arenas' guilt, including Allen's testimony and the victim's DNA in Arenas' vehicle.

Arenas also asserts that Hemingway created a hostile environment during trial that prejudiced him. However, Hemingway's threats to harm Arenas occurred outside the presence of the jury. Accordingly, there is no possibility that the comments "undermined the jury's ability to render a reliable judgment as to [Arenas'] guilt." *Marshall*, 118 Nev. at 648, 56 P.3d at 380. Therefore, we conclude that Arenas has not shown the joint trial resulted in prejudice and the district court did not

abuse its discretion.[1]  *See Jones*, 111 Nev. at 853, 899 P.2d at 547 (reviewing a district court's decision to sever joint trials for an abuse of discretion).

*For-cause challenge*

Arenas contends that the district court erred in granting the State's for-cause challenge to prospective juror no. 207 because the State improperly sought to dismiss her based on a language barrier.  "District courts have broad discretion in deciding whether to remove prospective jurors for cause."  *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005) (internal quotation marks omitted), *overruled on other grounds by Farmer v. State*, 133 Nev. 693, 405 P.3d 114 (2017).

Here, the State challenged prospective juror no. 207 for cause after she expressed strong religious beliefs against the death penalty and remained hesitant when Arenas tried to rehabilitate her.  When discussing

---

[1]We also discern no prejudice in the jury returning inconsistent verdicts by convicting Arenas of first-degree murder while convicting Hemingway of second-degree murder. *See Bollinger v. State*, 111 Nev. 1110, 1116-17, 901 P.2d 671, 675 (1995) (explaining that "there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled" (quoting *United States v. Powell*, 469 U.S. 57, 69 (1984))); *see also People v. Stembridge*, 221 P.2d 212, 217 (Cal. Dist. Ct. App. 1950) ("There was no inconsistency in the verdict as it was within the jury's province to find one defendant guilty and the other not guilty."). Additionally, the district court did not err in denying Arenas' request for additional peremptory challenges.  *See* NRS 175.041 (providing that codefendants must share in use of peremptory challenges); NRS 175.051(1) (providing that a defendant is allowed eight peremptory challenges when facing a sentence of death or life in prison); *Burnside v. State*, 131 Nev. 371, 386, 352 P.3d 627, 638 (2015) ("[T]here is no constitutional right to peremptory challenges; they arise from the exercise of a privilege granted by the legislative authority." (internal quotation marks omitted)).

(O) 1947A

the challenge, the State made a passing remark about prospective juror no. 207 potentially having a language barrier. However, the record shows that the State's primary concern was prospective juror no. 207's views about the death penalty. Therefore, we conclude the district court did not abuse its discretion. *See Browning v. State*, 124 Nev. 517, 530-31, 188 P.3d 60, 69-70 (2008) (concluding the district court did not abuse its discretion in removing a prospective juror for cause who opposed the death penalty on religious grounds); *see also Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014) (stating that "[a] prospective juror should be removed for cause only if [their] views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath" (internal quotation marks omitted)).

*Batson objection*

Arenas argues that the district court erred in denying his *Batson* objections to the State's use of three peremptory challenges. The Equal Protection Clause forbids a prosecutor from striking potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *McNair v. State*, 108 Nev. 53, 61-62, 825 P.2d 571, 577 (1992). A *Batson* objection to a peremptory challenge is assessed using a three-step framework. *See Batson*, 476 U.S. at 93-98; *Kaczmarek v. State*, 120 Nev. 314, 332, 91 P.3d 16, 29 (2004); *see also Williams v. State*, 134 Nev. 687, 689-92, 429 P.3d 301, 305-07 (2018) (explaining the three-step framework for district courts to utilize in resolving *Batson* objections). In this case, the district court denied the objection at the first step, which requires "the opponent of the peremptory strike [to] make a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Williams*,

134 Nev. at 689, 429 P.3d at 305 (internal quotation marks omitted). The burden at the first step "is not onerous and does not require the opponent of the strike to meet his or her ultimate burden of proof under *Batson*." *Watson v. State*, 130 Nev. 764, 775, 335 P.3d 157, 166 (2014). "Rather, the opponent of the strike must provide sufficient evidence to permit the trier of fact to draw an inference that discrimination has occurred." *Id.* (internal quotation marks omitted).

Here, Arenas argued that his case was sensitive to racial bias because some veniremembers expressed racial animus during voir dire and the State's key witnesses were Caucasian while he was African American and Hispanic. Additionally, he argued that the State engaged in disparate treatment of some veniremembers by asking them about their ability to understand the proceedings. *See id.* at 776, 335 P.3d at 167 (providing that, along with a pattern of strikes against a cognizable group, "circumstances that might support an inference of discrimination include, but are not limited to, the disproportionate effect of peremptory strikes, the nature of the proponent's questions and statements during voir dire, disparate treatment of members of the targeted group, and whether the case itself is sensitive to bias"). After hearing argument, the district court found that Arenas had not met his burden and denied his *Batson* objections.

Neither of Arenas' contentions show the district court clearly erred at the first step. *See Cooper v. State*, 134 Nev. 860, 863, 432 P.3d 202, 205 (2018) (reviewing a district court's step one determination for clear error). First, this case was not particularly sensitive to racial bias. The fact that witnesses and defendants were of different races or that prospective jurors expressed racial animus does not make Arenas' case sensitive to bias

as these circumstances could occur in any trial. Additionally, we conclude that Arenas' disparate treatment argument lacks merit. The record shows that the State had a reasonable basis for asking each of the veniremembers cited by Arenas about their ability to understand the proceedings. Therefore, we conclude the district court did not err in finding that Arenas had not made a prima facie case and denying his *Batson* objection. *See Williams*, 134 Nev. at 688, 429 P.3d at 305 (explaining that this court "give[s] great deference to the district court's finding and will only reverse if the district court clearly erred").

*Amendment to the indictment*

Arenas argues that the district court abused its discretion by allowing the State to amend the indictment during trial. We review the district court's decision to allow the State to amend the indictment for an abuse of discretion. *See Green v. State*, 94 Nev. 176, 177, 576 P.2d 1123, 1123 (1978).

Under NRS 173.095(1), "[t]he court may permit an indictment or information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The use of the conjunctive "and" means that if either condition is not satisfied, the district court cannot permit the amendment. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives."); *see also Jennings v. State*, 116 Nev. 488, 490, 998 P.2d 557, 559 (2000) (concluding that district court erred in allowing amendment of an information during

trial where amendment did not charge an additional or different offense but did prejudice the defendant's substantial rights).

Here, the original indictment charged Arenas with first-degree kidnapping with the use of a deadly weapon. The amended indictment added the resulting-in-substantial-bodily-harm enhancement. NRS 200.320 distinguishes between a first-degree kidnapping that results in substantial bodily harm and one that does not. *Compare* NRS 200.320(1)(a)-(c) (providing that first-degree kidnapping resulting in substantial bodily harm is punishable by a term of 15 to 40 years, life with the possibility of parole after 15 years, or life without the possibility of parole), *with* NRS 200.320(2)(a), (b) (providing that first-degree kidnapping not resulting in substantial bodily harm is punishable by a term of 5 to 15 years or life with the possibility of parole after 5 years). Thus, the addition of substantial bodily harm aggravated the charge of first-degree kidnapping and increased the potential punishment. *Cf. Benitez v. State*, 111 Nev. 1363, 1364, 904 P.2d 1036, 1037 (1995) ("A superseding indictment charging an offense that is a lesser included offense of an offense contained in the original indictment does not broaden or substantially amend the original charges.").

Given that the amended charge contained an additional allegation (substantial bodily harm) and subjected Arenas to a greater range of punishment, we conclude the district court abused its discretion because the amendment resulted in a "different offense" under NRS 173.095(1). *See State v. Sharpe*, 304 N.W.2d 220, 223 (Iowa 1981) (providing that amending a second-degree murder charge to first-degree murder constituted a "wholly new and different offense" because it contained an

additional element and a significantly greater penalty). Accordingly, the amendment failed the first condition in NRS 173.095(1), and we reverse the judgment of conviction as to count 4 and remand for the district court to resentence Arenas for first-degree kidnapping without the substantial-bodily-harm enhancement.[2]

*Motion to suppress evidence*

Arenas argues the district court erred in denying his motion to suppress evidence found in his vehicle and in finding that he legally abandoned his vehicle and the automobile exception applied. "A motion to suppress presents mixed questions of law and fact." *State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013). When reviewing a district court's resolution of such motions, we examine the factual findings for clear error and the legal conclusions de novo. *Id.*

"In order to assert a violation under the Fourth Amendment, one must have a subjective and objective expectation of privacy in the place searched or items seized." *State v. Taylor*, 114 Nev. 1071, 1077, 968 P.2d 315, 320 (1998). As a result, "[v]oluntarily abandoned property is not subject to Fourth Amendment protections." *State v. Lisenbee*, 116 Nev. 1124, 1130, 13 P.3d 947, 951 (2000). Here, Arenas drove his vehicle to Mexico, and law enforcement subsequently arrested him crossing the United States/Mexico border on foot. Under these facts, we conclude that

---

[2]We have also considered Arenas' contention that the district court erred by permitting the State to amend the type of property identified in the robbery charge and conclude that the district court did not abuse its discretion. *See Caffey v. State*, 765 S.W.2d 891, 892-93 (Tex. App. 1989) (providing that amending the type of property stolen did not create a new charge or prejudice the defendant's substantial rights).

the district court did not err in finding that Arenas abandoned his vehicle and therefore the district court properly denied his motion to suppress. *See United States v. Ramirez*, 145 F.3d 345, 353 (5th Cir. 1998) (explaining that where a defendant "had in fact fled the [United States to Mexico], the officers had a good faith reason to believe that the car had been abandoned" and the defendant could not "successfully challenge the search of the car").

Additionally, we conclude that the automobile exception applied. Under the automobile exception, "a police officer who has probable cause to believe the car contains contraband or evidence of a crime must either seize the vehicle while a warrant is sought or search the vehicle without a warrant. Given probable cause, either course is constitutionally reasonable." *Lloyd*, 129 Nev. at 750, 312 P.3d at 474. And we decline Arenas' invitation to revisit *Lloyd*'s holding that exigency is not a separate requirement for the automobile exception because he has not shown a compelling reason to do so. *See Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013) ("Under the doctrine of *stare decisis*, we will not overturn precedent absent compelling reasons for doing so." (quotation marks and alterations omitted)). Therefore, Arenas is not entitled to relief.[3]

---

[3]Arenas also argues that the district court erred in denying his request for an evidentiary hearing based on alleged intentional or reckless material falsehoods contained in the search warrant affidavit. Having reviewed Arenas' claims and the record, we conclude the district court did not err. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (providing that a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit").

SUPREME COURT
OF
NEVADA

(O) 1947A

*Prosecutorial misconduct*

Arenas argues that prosecutorial misconduct warrants reversal. In reviewing claims of prosecutorial misconduct, we must determine whether the prosecutor's conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008).

Arenas contends that the State improperly disparaged the defense during rebuttal argument. This court has been "critical of the prosecution for disparaging legitimate defense tactics." *Barron v. State*, 105 Nev. 767, 780, 783 P.2d 444, 452 (1989). Here, during closing argument, Arenas drew the jury's attention to inconsistencies between Allen's version of events and the physical evidence. In rebuttal, the State read excerpts from the defense closing argument and made sarcastic comments. We agree that the State acted inappropriately. *See id.* ("The appropriate way to comment, by the defense or the State, is simply to state that the prosecution's case or the defendant is not credible and then to show how the evidence supports that conclusion."). However, we conclude the prosecutor's comments did not result in an unfair trial and do not warrant reversal.[4] *See Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005) ("This court must consider the context of such statements, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." (internal quotation marks omitted)).

---

[4]To the extent Arenas claims the prosecutor improperly cited religious language during the penalty hearing, Arenas did not provide any relevant authority supporting the claim. Therefore, we decline to address this issue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).



*Cumulative error*

Finally, Arenas argues that cumulative error warrants reversal. *See Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (providing the relevant factors to consider for a claim of cumulative error). We disagree. While the erroneous amendment to the kidnapping count warrants remand for resentencing, we have identified only one other error regarding prosecutorial misconduct. Thus, there is nothing to cumulate. *See Lipsitz v. State*, 135 Nev. 131, 140 n.2, 442 P.3d 138, 145 n.2 (2019) (concluding that errors did not cumulate as there was only one error). Accordingly, we

ORDER the judgment of conviction AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

cc:    Hon. Michelle Leavitt, District Judge
      Special Public Defender
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

